UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                              Case No. 04-10816 DHW
                                                   Chapter 7
GARY LAMAR MILLER and
PEGGY HARDWICK MILLER,

        Debtors.

MEMORANDUM OPINION

      The chapter 7 trustee filed a motion to reclassify the claim of The Citizens Bank of Geneva, Alabama ("Bank") from secured to general unsecured status. The Bank filed an objection to the motion.

      At the hearing, the parties submitted the motion to the court effective July 1, 2005 based on a joint stipulation of facts and legal briefs.

Jurisdiction

      The court derives its jurisdiction in this matter from 28 U.S.C. § 1334 and from the order of the United States District Court for the Middle District of Alabama referring title 11 matters to this court. Further, because a proceeding to determine the allowance of a claim against the estate is a core proceeding under 28 U.S.C. § 157(b)(2)(B), this court's jurisdiction extends to the entry of a final order or judgment.

Undisputed Facts

      The undisputed facts may be summarized as follows.

      Peggy Hardwick Miller, a joint debtor in this chapter 7 case, is one of four daughters of C.M. and Dorothy Hardwick. C.M. Hardwick died testate on March 17, 1976 leaving a house and lot in Panama City, Florida ("beach house") and approximately 600 acres in Geneva County, Alabama to his wife, Dorothy Hardwick.

Peggy and her three sisters acquired the realty from their mother partly by deed and partly by will. They received the beach house by deed on March 8, 1984 and the 600 acres by devise on March 4, 1989. Peggy Miller acquired a one-fourth interest in the realty.

The Bank filed suit against Peggy Miller, Gary Miller, and MOC, Inc., in the Circuit Court of Geneva County, Alabama on March 9, 2000.

While the action was pending, Peggy Miller and her sisters transferred the beach house and 600 acres by warranty deed to Hardwick Farms, L.L.C., an Alabama limited liability company.[1] The deed was recorded on November 6, 2000 in the probate office of Geneva County, Alabama. The deed was not recorded in Bay County, Florida, where the beach house was located.

Peggy Miller has a 25% uncertificated membership interest in the L.L.C. The membership interest is not dealt in or traded in securities exchanges or in securities markets and has not been designated a "security" within the meaning of *Ala. Code* § 7-8-103. Nor has the L.L.C. been registered as an investment company pursuant to federal investment company laws.

The Bank obtained a judgment in the state court action on February 22, 2001 in the amount of $209,548.64. The judgment was recorded in the Geneva County Probate Court on April 20, 2001. The judgment was neither domesticated in the State of Florida nor recorded with the Probate Court of Bay County, Florida.

The Bank filed a writ of execution in the Circuit Court of Geneva County, Alabama on May 11, 2001. The sheriff returned the writ of execution on May 23, 2001 listing two parcels of realty and four vehicles. Neither of the two parcels listed by the sheriff is the beach house or the

---

[1] The limited liability company was formed and recorded in Geneva County, Alabama, on October 6, 2000.

Case 04-10816   Doc 56   Filed 09/30/05   Entered 09/30/05 16:51:09   Desc Main
Document      Page 2 of 11

600 acres at issue here.

On March 28, 2002 the Bank filed a state court complaint to aid in execution of the judgment. The complaint states that Peggy Miller formed Hardwick Farms, L.L.C. for the purpose of defeating a creditor. The Bank seeks to void the articles of organization of Hardwick Farms and either carve out Peggy Miller's interest in the real property or sell the real property for division.

While the action was pending, Peggy and Gary Miller filed a joint chapter 7 case on April 15, 2004. On April 30, 2004, the Geneva County Circuit Court entered an order staying the Bank's action as to Peggy and Gary Miller.

On November 8, 2004 the Bank filed a secured proof of claim in the bankruptcy case in the amount of $123,468.91. The trustee filed the instant motion to strike or reclassify the claim to unsecured status.

Conclusions of Law

The issue is whether the Bank's prepetition judgment lien attached to the Florida beach house, the 600 acres in Geneva County, or to Peggy Miller's membership interest in Hardwick Farms, L.L.C. If so, the Bank's interest is superior to that of the trustee.

Though federal law determines what property constitutes property of the bankruptcy estate, "[p]roperty interests are created and defined by state law." *Butner v. United States,* 440 U.S. 48, 55 (1979). Therefore, the Bank's judgment lien, if any, must be determined under state law.

Florida Beach House

The April 20, 2001 recording of the Bank's judgment in the Probate Court of Geneva County, Alabama, created a lien on property of Peggy Miller only within that county. The statute creating this judgment lien

3

provides:

> Every judgment, a certificate of which has been filed as provided in Section 6-9-210, shall be a lien in the county where filed on all property of the defendant which is subject to levy and sale under execution . . . .

*Ala. Code* § 6-9-211 (1975) (emphasis added).

The lien did not attach to the Florida beach house because it is not located in Geneva County, Alabama. The Bank did not domesticate the judgment against Peggy Miller in the State of Florida nor record it with the Probate Court of Bay County, Florida where the property is located.[2] *See Florida Enforcement of Foreign Judgments Act*, Fla. Stat. §§ 55.501- 55.509 (2004). Therefore, the Bank had no judgment lien on the beach house as of the date of the chapter 7 petition.[3]

## The Geneva County 600 Acres

By deed recorded November 6, 2000, Peggy Miller transferred her one-fourth interest in the 600 acres to Hardwick Farms, L.L.C. The transfer predated the Bank's judgment which was recorded on April 20, 2001.

---

[2] The bank could have acquired a judgment lien on the beach house by following the procedures outlined by Florida law. Peggy Miller was a record owner of the beach house at the time the judgment was obtained because the deed to Hardwick Farms, L.L.C. had not been recorded in Florida.

[3] In addition, the trustee appears to have an interest in the beach house superior to Hardwick Farms, L.L.C. Because the deed to Hardwick Farms, L.L.C. was not recorded in Florida, Peggy Miller was a record owner on the date of bankruptcy. Pursuant to the "strong arm" provisions of 11 U.S.C. § 544, the trustee, as of the commencement of the bankruptcy case, stands in the shoes of a judgment creditor or of a bona fide purchaser for value and therefore has priority over unrecorded interests.

4

Without question, the Bank's recorded judgment created a lien on property in Geneva County belonging to Peggy Miller. *Ala. Code* § 6-9-211 (1975). However, Peggy Miller did not own the 600 acres when the Bank recorded its judgment; Hardwick Farms, L.L.C. owned the 600 acres.

Therefore, the Bank's judgment lien did not attach to the 600 acres. Absent some other legal theory under which its judgment lien is recognized, the Bank cannot prevail. Other theories advanced by the Bank will be discussed *infra*.

<u>Peggy Miller's Interest in Hardwick Farms, L.L.C.</u>

A judgment lien attaches only to property which is subject to levy and sale under execution. *Ala.* Code § 6-9-211 (1975).

Section 6-9-40 defines which property is subject to execution. The statute provides that executions may be levied on "personal property of the defendant, except things in action." *Ala. Code* § 6-9-40(2) (emphasis added).

A "thing in action" is synonymous with a "chose in action." *Peavy Lumber Co. v. Murchison*, 272 Ala. 251, 130 So. 2d 338, 340 (1961). A chose in action is "a personal right to demand money or property by an action." *Id.* at 340.

The trustee contends that Peggy Miller's membership interest in Hardwick Farms, L.L.C. is a chose in action and therefore not subject to levy and sale under execution.[4] The term "chose in action" includes

> an infinite variety of contracts, covenants, and promises which

---

[4] The parties stipulate that her interest is not a "security" within the meaning of section 7-8-103(c). Therefore, her interest is not subject to the levy provisions of section 7-8-112 for uncertificated securities.

5

confer on one party a right to recover a personal chattel or a sum of money from another by action. *Sheldon v. Sill,* 49 U.S. (8 How.) 441, 12 L.Ed. 1147 (1850). For example, a chose in action includes (i) money due under a contract, *Peavy Lumber Co.,* 130 So.2d at 341, (ii) damages arising from a breach of a contract, *Merchants Nat'l Bank of Mobile v. Ching,* 681 F.2d 1383, 1389 (11th Cir.1982), (iii) a check, *Tillery v. State,* 44 Ala.App. 369, 209 So.2d 432, 435 (1968), (iv) an interest in a pension and profit-sharing plan, *In re Wilson,* 56 B.R. 693, 696 (Bankr.M.D.Ala.1986), and (v) the right to receive payment under an insurance contract and the proceeds from such policy, *see Robinson v. Eppes,* 252 Ala. 242, 40 So.2d 326, 327 (1949). Additionally, intangible personal property like instruments and securities for the payment of money such as bonds and promissory notes, book entry accounts, an interest in an insurance policy, judgments, and shares of stock are within the perimeters of what is a chose in action. *Maricopa County v. Trustees of Arizona Lodge No. 2.,* 52 Ariz. 329, 80 P.2d 955 (1938).

*In re Head*, 204 B.R. 1022,1025 (Bankr. N.D. Ala. 1997).

The Alabama Supreme Court has held that a partner's interest in a partnership is a chose in action. A limited liability company is treated similarly to a partnership by state law for many purposes. *See Ala. Code* § 10-12-8(a).

*Ala. Code* § 10-12-35(a) provides the "sole and exclusive remedy of a judgment creditor with respect to the judgment debtor's membership interest" in a limited liability company:

> (a) On application to a court of competent jurisdiction by any judgment creditor of a member or assignee, the court may charge the interest of the member or assignee with payment of the unsatisfied amount of the judgment interest. To the extent

6

so charged, the judgment creditor has only the rights of an assignee of a financial interest.

Therefore, the membership interest may be charged only by application to a court of competent jurisdiction, and only the financial rights of the member may be charged.

As of the date of the chapter 7 petition, the Bank had neither applied for nor obtained the "sole and exclusive remedy" provided by section 10-12-35(a). The action filed by the Bank on March 28, 2002 sought to void the articles of organization of Hardwick Farms and either carve out Peggy Miller's interest in the real property or sell the real property for division. However, that relief is different from and beyond that contemplated by the statute. Further, even if the action were one under § 10-12-35(a), no judgment or final order entered in that action before the bankruptcy case was filed. Therefore, the bank had no charge on the membership interest under section 10-23-35 when the bankruptcy case was filed.

For the above reasons, the court is persuaded that Peggy Miller's membership interest in Hardwick Farms, L.L.C. is a chose in action and not subject to levy and execution. Her interest is intangible personalty indistinguishable from shares of stock or partnership interests. As a chose in action, her membership interest is not subject to execution through levy and sale. The Bank did not avail itself of the "sole and exclusive remedy" for charging the membership interest. Therefore, the Bank's judgment lien did not attach to Peggy Miller's membership interest in Hardwick Farms, L.L.C.

Other Theories Advanced by Bank
1. Execution Lien

The Bank contends that its claim is secured by virtue of an execution lien. An execution lien is established by levy of a writ of execution:

> A writ of execution is a lien only within the county in which it is received by the officer authorized to execute it on the lands of the defendant in such county subject to levy and sale from the time the writ is levied by him and notice of levy as provided in Section 35-4-132 is filed for record with the judge of probate of such county. Such write is a lien upon the personal property of the defendant subject to levy and sale from the time only that the writ is levied upon such personal property.

*Ala. Code* § 6-9-40 (1975). The lien "may be obtained absent recording to create a judgment lien or in addition to [a] judgment lien." *In re Pouncey*, 59 B.R. 615, 617 (Bankr. M.D. Ala. 1986). The lien "attaches to all of the debtor's right, title and interest in the attached property" and is "established at the time of the levy." *Id.*

For several reasons, the Bank did not obtain an execution lien on the property made the subject of this action. First, no writ of execution was levied on the property made the subject of this action. The writ of execution returned by the Sheriff on May 23, 2001 listed only 2 parcels of real property and 4 vehicles. The list did not include the beach house, the 600 acres in Geneva County, Alabama or the membership interest of Peggy Miller in Hardwick Farms, L.L.C.

Second, the execution lien, even if created, would not reach the Florida beach house which is located outside of Geneva County, Alabama. *See Ala. Code* § 6-9-40 (1975).

Third, the execution lien, even if created, could not reach the membership interest in the limited liability company because it is not subject to levy and sale under execution for reasons discussed *supra*. *See Ala. Code* § 6-9-40 (1975).

8

## 2. Equitable Lien

The Bank also contends that it has an equitable lien on the property. The Bank asserts that the filing of the subsequent civil action in March 2002 created an "equitable levy."

The Bank cites to *Mathews v. Mobile Mut. Ins. Co.*, 1883 WL 858, 3 (Ala. 1883). In that case, the court recognized an equitable lien created by the filing of a fraudulent transfer suit in equity by a judgment creditor whose remedies at law had been exhausted. In other words, the judgment debtor's assets were not "subject to execution at law." *Id.* at 3. Equity therefore afforded a remedy. *Mathews* was decided before the merger of law and equity.

However, Alabama's Fraudulent Transfer Act provides a legal mechanism for obtaining a prejudgment lien on property made the subject of a fraudulent transfer action. *See Ala. Code* § 8-9A-7. Therefore, a remedy is available at law, and the predicate for resort to equity has not been established.[5] There is no indication that the Bank availed itself of the legal remedies provided by section 8-9A-7. *See In re Leonard*, 125 F.3d 543, 545-46 (7th Cir. 1997).

## 3. Bank May Proceed with Fraudulent Transfer Action

The Bank further contends that it may proceed with the civil action commenced in state court despite the bankruptcy. The Bank characterizes the action as a fraudulent conveyance action. The Bank argues that if the transfer by Peggy Miller of the realty to the limited liability company is set aside as fraudulent, the bank's judgment lien (which arose after the transfer) would retroactively attach to the beach house and 600 acres.

---

[5] Even if the Bank acquired an equitable lien on the property by filing the subsequent civil action (which may or may not have constituted a fraudulent transfer action), the question remains whether that equitable lien would be superior to a trustee's rights under 11 U.S.C. § 544.

9

First, irrespective of the merits *vel non* of the Bank's legal conclusions, Bank is stayed by operation of law from continuing the action. 11 U.S.C. § 362(a)(2) stays "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title." The Bank has not alleged grounds sufficient for lifting the stay under 11 U.S.C. § 362(d).

Second, the Bankruptcy Code vests standing in the chapter 7 trustee to recover fraudulent conveyances under state law. 11 U.S.C. § 544(b)(1). The trustee has the duty to recover property of the estate for the benefit of creditors. 11 U.S.C. § 704(1). Property recovered by the trustee under section 544(b)(1) is property of the estate. 11 U.S.C. § 541(a)(3). As stated by the Fifth Circuit Court of Appeals,

> Bankruptcy did not, however, forever extinguish the right to recover property that [the debtor] may have fraudulently conveyed. Bankruptcy simply caused that right to vest in the trustee and placed the future of this lawsuit within the control of the bankruptcy court.

*Carlton v. Baww, Inc.*, 751 F.2d 781 (5th Cir. 1985).

Though there may be exceptions under which a creditor may be permitted to bring an avoidance action, none have been asserted as applicable to this case. *See, e.g., In re Chase & Sanborn Corp*, 813 F.2d 1177 (11th Cir. 1987). There is no allegation that trustee has unjustifiably refused to pursue the action, and the trustee has certainly not consented to the action. Indeed, the trustee has an interest in Peggy Miller's membership interest in the L.L.C. It may or may not be in the best interest of the estate to set aside the transfer. The trustee has a fiduciary duty to make that decision.

10

Case 04-10816   Doc 56   Filed 09/30/05   Entered 09/30/05 16:51:09   Desc Main
                    Document      Page 10 of 11

Conclusion

The court concludes that the Bank has not established a lien on the Florida beach house, the 600 acres in Geneva County, Alabama, or Peggy Miller's membership interest in Hardwick Farms, L.L.C.

This opinion does not determine the Bank's interest in any other property by virtue of the judgment lien. The Bank may have a lien on other property as a result of either its judgment lien or execution lien. This order does not make that decision. This order merely holds that, to the extent the Bank's opposition to the trustee's motion is predicated on a lien on the above property, that opposition is overruled, and the trustee's motion to reclassify the claim is due to be granted.

Done this 30th day of September, 2005.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Derek E. Yarbrough, Attorney for Creditor
William W. Nichols, Attorney for Trustee